**In the United States District Court**
**Middle District of Georgia**
**Athens Division**

| | | |
|---|---|---|
| Michael Charles Ward, | : | |
| | : | |
|    Plaintiff, | : | |
| | : | Civil Action File |
| | : | |
| vs. | : | No. _____ |
| | : | |
| | : | |
| James V. Chafin, individually; | : | |
| Jon R. Forwood, individually; | : | |
| Kenneth W. Mauldin, individually; and | : | |
| John Does 1 – 4, individually; | : | |
| | : | |
|    Defendants. | : | |

## COMPLAINT

Plaintiff Michael Charles Ward, by and through counsel, states his claims against Defendants alleging as follows:

### Introduction

1.   This action arises from Defendants' intentional and malicious acts and prosecution directed towards Plaintiff when they were acting under color of law and their actions resulted in the prosecution of Plaintiff for charges barred by the Double Jeopardy Clause of the Fifth Amendment to United States Constitution and Article I, Section I, Paragraph XVIII of the Georgia Constitution of 1983, O.C.G.A. § 16-1-18 resulting in Plaintiff's incarceration

and imprisonment in the Georgia Department of Corrections for nearly a decade.

2. Plaintiff brings his claims for damages pursuant to 42 U.S.C. §§ 1983 and 1988, the 4th, 5th and 14th Amendments to the United States Constitution and the provisions of *Heck v. Humphrey*, 512 U.S. 477 (1994) against Defendants James V. Chafin ("Chafin") in his individual capacity; Jon R. Forwood ("Forwood") in his individual capacity; Kenneth W. Mauldin ("Mauldin") in his individual capacity and John Does 1 – 4, in their individual capacity.

3. At all times relevant to this action, Defendants were acting under color of law.

4. Plaintiff brings supplemental state law claims against Defendants.

### The Parties, Jurisdiction and Venue

5. Plaintiff is a citizen of the United States who currently, and at all times material to this action, also was a resident of Georgia.

6. Defendant Chafin is, upon information and belief, a citizen and resident of Georgia and this District.

7. Defendant Chafin is subject to the jurisdiction of this Court.

8. Defendant Forwood is, upon information and belief, a citizen and resident of Georgia.

9. Defendant Forwood is subject to the jurisdiction of this Court.

10.    Defendant Mauldin is, upon information and belief, a citizen and resident of Georgia and this District.

11.    Defendant Mauldin is subject to the jurisdiction of this Court.

12.    John Does 1 – 4 are individuals whose identities are unknown to Plaintiff who, at all times relevant to this action acted under color of law and who, upon information and belief, acted individually and in concert with each other and in concert with Defendants Chafin, Forwood and Mauldin to deprive Plaintiff of his liberty and other clearly established rights.

13.    John Does 1 – 4 are citizens and residents of Georgia and this district and are subject to the jurisdiction of this Court.

14.    Venue is proper in this Court as the acts giving rise to this action occurred in this District.

15.    This Court has subject matter jurisdiction as this action is brought pursuant to the Constitution of the United States and 42 U.S.C. § 1983.

16.    This Court has supplemental subject matter jurisdiction over Plaintiff's state law claims alleged in this Complaint.

**General Allegations**[1]

17.   At all times relevant to this action, Plaintiff was a United States citizen and entitled to all the rights and privileges afforded him by the United States Constitution and the laws of the State of Georgia.

18.   At all times relevant to this action, the Double Jeopardy Clause of the 5th Amendment to the United States Constitution "forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."

19.   At all times relevant to this action, the Double Jeopardy Clause of the 5th Amendment to the United States Constitution protects a defendant in a criminal proceeding from attempts to re-litigate the facts after an acquittal.

20.   At all times relevant to this action, the 4th Amendment to the United States Constitution afforded Plaintiff the right to be free from seizure and the deprivation of liberty as a result of a conviction that (a) violated the Double Jeopardy Clause and (b) was lacking of probable cause.

21.   At all times relevant to this action, Georgia law prohibited the prosecution of any case against an individual who "was formerly prosecuted for a different

---

[1]  Collectively, Defendants Chafin, Forwood and Mauldin are referred to as "Defendant Prosecutors."

4

crime or for the same crime based upon different facts, if such former prosecution:

(1) Resulted in either a conviction or an acquittal and the subsequent prosecution is for a crime of which the accused could have been convicted on the former prosecution, is for a crime with which the accused should have been charged on the former prosecution (unless the court ordered a separate trial of such charge), or is for a crime which involves the same conduct …" O.C.G.A. § 16-1-8.

22.   At all times relevant to this action, Georgia law defined the lack of probable cause as "circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused."

23.   Any reasonable person (and especially a person who has graduated from law school, passed the Georgia bar, was admitted to practice law in the State of Georgia and did practice law in the State of Georgia for years) would know that any alleged act, prohibited from being prosecuted by both the Double Jeopardy Clause and O.C.G.A. § 16-1-8, had no grounds for proceeding.

24.   Defendant Chafin graduated from the Mercer University's Walter F. George School of Law, passed the Georgia bar exam and in 2001 was admitted to practice law in the State of Georgia.

25. At all times relevant to this action, Defendant Chafin was employed as an Assistant District Attorney by the Western Judicial Circuit of the State of Georgia and was acting within the scope of his employment and under color of law.

26. Defendant Chafin, as a lawyer and prosecutor, was under a professional duty to refrain from prosecuting a case which he knew violated an individual's rights under the United States Constitution, including but not limited to, a case that violated the Double Jeopardy Clause of the 5th Amendment.

27. Further, as a prosecutor, Defendant Chafin was bound to abide by the State Bar of Georgia Rules of Professional Conduct including but not limited to Rule 3.8 which provides that a prosecutor in a criminal case *shall* refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause. (emphasis supplied).

28. Defendant Forwood graduated from the University of Wyoming School of Law, was admitted to practice in Wyoming in 1976, passed the Georgia bar exam (or was granted a waiver for the same due to his years of experience) and in 2007 was admitted to practice law in the State of Georgia.

29. At all times relevant to this action, Defendant Forwood was employed as an Assistant District Attorney by the Western Judicial Circuit of the State of

Georgia and was acting within the scope of his employment and under color of law.

30. Defendant Forwood, as a lawyer and prosecutor with decades of experience was under a professional duty to refrain from prosecuting a case which he knew violated an individual's rights under the United States Constitution, including but not limited to, a case that violated the Double Jeopardy Clause of the 5th Amendment.

31. Further, as a prosecutor, Defendant Forwood was bound to abide by the State Bar of Georgia Rules of Professional Conduct including but not limited to Rule 3.8 which provides that a prosecutor in a criminal case *shall* refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause. (emphasis supplied).

32. Defendant Mauldin graduated from the University of Georgia School of Law, passed the Georgia bar exam and in 1980 was admitted to practice law in the State of Georgia.

33. At all times relevant to this action, Defendant Mauldin was the elected District Attorney for the Western Judicial Circuit of the State of Georgia and was acting within the scope of his employment and under color of law.

34. Defendant Mauldin, as a lawyer and prosecutor, was under a professional duty to refrain from prosecuting a case which he knew violated an individual's

rights under the United States Constitution, including but not limited to, a case that violated the Double Jeopardy Clause of the 5th Amendment.

35.    Further, as a prosecutor, Defendant Mauldin was bound to abide by the State Bar of Georgia Rules of Professional Conduct including but not limited to Rule 3.8 which provides that a prosecutor in a criminal case *shall* refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause. (emphasis supplied).

36.    Further, as District Attorney, Defendant Mauldin had the duty to implement policies, practices and procedures for the District Attorney's office and to train and supervise the Assistant District Attorneys and other personnel in that office.

37.    On or about November 20, 2007, Defendant Prosecutors presented information to a grand jury impaneled for Oconee County, Georgia regarding alleged acts of Plaintiff.

38.    On or about November 20, 2007, Defendant Prosecutors presented information to a grand jury impaneled for Oconee County, Georgia that resulted in the indictment ("the 1st indictment") of Plaintiff for, *inter alia*, stalking, as Georgia law defines that term.

39.   From December 3, 2007 until January 23, 2008, Defendant Prosecutors reviewed and investigated a single act of Plaintiff of sending a book to the alleged victim from the 1st indictment.

40.   Defendant Prosecutors, in reviewing and investigating the action of Plaintiff on December 3, 2007, were performing investigative or administrative functions.

41.   Defendant Prosecutors made the decision to charge Plaintiff with aggravating stalking based on the single act of sending a book in violation of a protective order.

42.   Defendant Prosecutors made their charging decision based upon their own investigation.

43.   On or about January 24, 2008, based upon their review and investigation into Plaintiff's actions of December 3, 2007, presented the information that they had gathered from their investigation to a grand jury impaneled for Oconee County, Georgia that resulted in the indictment ("the 2nd indictment") of Plaintiff for the sole count of aggravated stalking, as Georgia law defines that term, based on a single incident that occurred on or about December 3, 2007. A true and correct copy of the 2nd indictment is attached to this Complaint as Ex. 1.

44. Between December 3, 2007 and January 23, 2008, Defendant Prosecutors knew Georgia law required that the charge of aggravated stalking consist of a pattern of harassing and intimidating behavior and a single violation of a protective order, alone, does not establish such a pattern.

45. At all times relevant to this action, Georgia law required that the charge of aggravated stalking consist of a pattern of harassing and intimidating behavior and a single violation of a protective order, alone, does not establish such a pattern.

46. At all times relevant to this action, under Georgia law, the 1st indictment's stalking charge was a lesser included offense of aggravated stalking.

47. The alleged victim for the 1st indictment and the 2nd indictment was the same person.

48. Defendant Prosecutors, at all times, knew the alleged stalking victim for the 1st indictment and the 2nd indictment was the same person.

49. On or about August 3, 2009, Defendant Prosecutors began the trial of Plaintiff for the November 2007 indictment (the 1st indictment), including the stalking charges (but not the aggravated stalking charge set forth in the 2nd indictment).

50. On or about August 7, 2009, the trial jury returned a verdict acquitting Plaintiff of the stalking charges contained in the 1st indictment.

51.    The jury's acquittal of Plaintiff on stalking charges angered Defendant Prosecutors.

52.    Once the jury acquitted Plaintiff of the stalking charges contained in the 1st indictment, there was no longer any probable cause to support the charging decision that resulted in the 2nd indictment.

53.    Once the jury acquitted Plaintiff of the stalking charges contained in the 1st indictment, the 2nd indictment, based upon a single act and containing no other allegations, lacked probable cause.

54.    Defendant Prosecutors, seasoned prosecutors, knew that after the jury acquitted Plaintiff on the 1st indictment's stalking charge, there was no legal basis to proceed any further with the charge in the 2nd indictment.

55.    Defendant Prosecutors, seasoned prosecutors, knew that after the jury acquitted Plaintiff on the 1st indictment's stalking charge, O.C.G.A. § 16-1-8 prohibited the further prosecution of Plaintiff for the 2nd indictment.

56.    Defendant Prosecutors, seasoned prosecutors, knew that after the jury acquitted Plaintiff on the 1st indictment's stalking charge, the Double Jeopardy Clause of the 5th Amendment to the United States Constitution forbid the prosecution of Plaintiff for the 2nd indictment.

57.  Defendant Prosecutors, with combined practice experience (at that time) of over six (6) decades, knew that the charge in the 2nd indictment lacked probable cause.

58.  Despite this knowledge, Defendant Prosecutors nonetheless refused to dismiss the 2nd indictment.

59.  Plaintiff requested that Defendant Prosecutors dismiss the 2nd indictment.

60.  Despite the jury acquittal of Plaintiff on the 1st indictment's stalking charge, and Defendant Prosecutors' knowledge that proceeding with to trial on the 2nd indictment violated both the Double Jeopardy Clause of the 5th Amendment and O.C.G.A. § 16-1-8, Defendant Prosecutors nonetheless proceeded to prosecute and try Plaintiff on the 2nd indictment's aggravated stalking charge.

61.  Defendant Prosecutors, with combined practice experience (at that time) of over six (6) decades, knew that the Double Jeopardy Clause of the 5th Amendment to the United States Constitution as well as Georgia law absolutely prohibited the prosecution of Plaintiff on the charge contained in the 2nd indictment.

62.  Defendant Prosecutors had no discretion to proceed to prosecute an indictment that they knew lacked probable cause.

63.  As prosecutors, Defendant Prosecutors had the duty to dismiss any indictment that lacked probable cause.

64.    Defendant Prosecutors had no discretion to proceed to prosecute an indictment that they knew violated O.C.G.A. § 16-1-8.

65.    As prosecutors, Defendant Prosecutors had the duty to dismiss any indictment that violated O.C.G.A. § 16-1-8.

66.    Defendant Prosecutors had no discretion to proceed to prosecute an indictment that they knew violated the Double Jeopardy Clause of the 5th Amendment to the United States Constitution.

67.    As prosecutors, Defendant Prosecutors had the duty to dismiss any indictment the prosecution of which would violate the Double Jeopardy Clause of the 5th Amendment to the United States Constitution.

68.    Defendant Prosecutors, in refusing to dismiss the 2nd indictment, even though they knew the Double Jeopardy Clause of the 5th Amendment to the United States Constitution and Georgia law forbid the prosecution, were acting with the intent to harm Plaintiff.

69.    Defendant Prosecutors, in refusing to dismiss the 2nd indictment, even though they knew the Double Jeopardy Clause of the 5th Amendment to the United States Constitution and Georgia law forbid the prosecution, were acting with the intent to harm Plaintiff because they were angry that the jury had acquitted Plaintiff of the stalking and other charges contained in the 1st indictment.

70. The dismissal of the 2nd indictment, when such charge lacked probable cause and was prohibited by the United States Constitution and Georgia law, would have been an administrative act.

71. At the January 2010 trial, Defendant Prosecutors presented and relied upon the same evidence to prove aggravated stalking that they had used in their attempts to prove the 1st indictment's stalking charge for which Plaintiff was acquitted.

72. In January 2010, just five months after Plaintiff's acquittal on the 1st indictment's stalking charge and based upon the *same evidence* that Defendant Prosecutors presented in the August 2009 trial, Plaintiff was convicted of aggravated stalking and sentenced to ten (10) years imprisonment.

73. Plaintiff began serving the sentence immediately following the conviction of the 2nd indictment's charge.

74. Between December 3, 2007 and January 24, 2008, Defendant Prosecutors knew that Georgia law required that the charge of aggravated stalking consist of a pattern of harassing and intimidating behavior and a single violation of a protective order, alone, does not establish such a pattern.

75. At all times before January 24, 2008, Defendant Prosecutors knew that a single act in violation of a protective order, such as was alleged in the 2nd

indictment, was, as a matter of law, insufficient to establish probable cause for a charge of aggravated stalking.

76.    Once Plaintiff was acquitted of the 1st indictment's charge of stalking, the United States Constitution and Georgia law mandated that the the 2nd indictment be dismissed.

77.    The dismissal of the 2nd indictment to avoid a prosecution barred by the United States Constitution and Georgia law would have been an administrative act.

78.    Following Plaintiff's January 2010 conviction, Plaintiff filed a motion for new trial on February 3, 2010 based upon the conviction's nullity due to, *inter alia*, its violation of the Double Jeopardy Clause.

79.    On February 4, 2010, the Superior Court of Oconee County entered an Order setting Plaintiff's *Motion for New Trial* to be heard on April 20, 2010.

80.    The setting of a motion for hearing, such as Plaintiff's *Motion for New Trial*, is an administrative function or act.

81.    Upon information and belief, Defendant Prosecutors acted in concert with each other and John Does 1 – 3 to have Plaintiff's *Motion for New Trial* continued from the set April 20, 2010 date.

82.    On July 24, 2010, the Superior Court of Oconee County entered an Order resetting Plaintiff's *Motion for New Trial* to be heard on October 19, 2010.

83.    Upon information and belief, Defendant Prosecutors acted in concert with one another and with John Does 1 – 3 to have Plaintiff's *Motion for New Trial* continued from the set October 19, 2010 date.

84.    The Superior Court of Oconee County did not hold a hearing on Plaintiff's *Motion for New Trial* (filed February 3, 2010) until September 21, 2017.

85.    Upon information and belief, Defendant Prosecutors acted in concert with one another and with John Does 1 – 3 to have Plaintiff's *Motion for New Trial* continued from February 3, 2010 until September 21, 2017 – a period of over 6 ½  years.

86.    Defendant Prosecutors never prepared or filed a written response to Plaintiff's *Motion for New Trial*.

87.    Plaintiff remained incarcerated with the Georgia Department of Corrections during these continuances of his *Motion for New Trial.*

88.    During the period Plaintiff's *Motion for New Trial* was pending (from February 3, 2010 until September 21, 2017 – a period of 2,780 days), Plaintiff filed other motions upon which the Superior Court of Oconee County issued orders.

89.    On December 14, 2017, nearly a full seven (7) years after it was filed, the Superior Court of Oconee County issued an Order denying Plaintiff's *Motion for New Trial*.

90.   On or about January 8, 2018, Plaintiff appealed the December 14, 2017 order denying his *Motion for New Trial*.

91.   Plaintiff's appeal of the denial of his *Motion for New Trial* was timely.

92.   In February 2018, Plaintiff was released from custody of the Georgia Department of Corrections, having served the complete sentence that resulted from the conviction of the charge contained in the 2nd indictment – the conviction that violated both the Double Jeopardy Clause of the United States Constitution and Georgia law.

93.   On July 2, 2019, the Georgia Court of Appeals reversed and vacated Plaintiff's conviction of the charge contained in the 2nd indictment holding that the conviction for aggravated stalking violated the Double Jeopardy Clause.

94.   On March 13, 2020, the Supreme Court of Georgia denied the petition for writ of *certiorari* filed seeking to overturn the Court of Appeals.

95.   Thus, on March 13, 2020, the criminal proceeding of the 2nd indictment terminated in Plaintiff's favor.

96.   This action is filed less than two (2) years from the termination of the criminal proceeding in Plaintiff's favor and, therefore, is timely.

**Count One – Violation of 42 U.S.C. § 1983 – Defendant Prosecutors**

97.   Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth herein verbatim.

98.   At all times relevant to this action, Plaintiff had the constitutional rights to (a) not be prosecuted in violation of the Double Jeopardy Clause of the 5th Amendment to the United States Constitution; and (b) not to be seized and deprived of liberty as the result of the intentional act of ignoring Georgia law and going forward with a prosecution that lacked probable cause, had no ground for proceeding except for Defendant Prosecutors' desire to injure Plaintiff.

99.   The reversal of the conviction of Plaintiff of the 2nd indictment's charge – and the Supreme Court of Georgia's denial of the petition for certiorari – constitutes a termination of the proceedings favorable to Plaintiff.

100.   Defendant Prosecutors' conduct constitutes a claim of federal "malicious prosecution" under the 4th Amendment.

101.   Plaintiff's constitutional right to be free from illegal seizure and detention without probable cause was clearly established before January 24, 2008.

102.   Defendant Prosecutors' actions in reviewing and investigating Plaintiff regarding the December 3, 2007 act, resulted in Plaintiff being deprived of his liberty from on or about August 7, 2009 until February 2, 2018 – a period of 3,101 days.

103.   Plaintiff's constitutional right to be free from illegal seizure and detention from a conviction that violates the Double Jeopardy Clause of the 5th Amendment was clearly established before August 8, 2009.

104.   Defendant Prosecutors' action in causing a warrant to issue for the arrest of Plaintiff based upon the flawed charge contained in the 2nd indictment – a charge that lacked probable cause – violated Plaintiff's clearly established constitutional rights including but not limited to rights afforded him by the 4th Amendment.

105.   Defendant Prosecutors' investigation into Plaintiff's act of December 3, 2007 was the basis for the flawed 2nd indictment and Plaintiff's arrest based upon that indictment.

106.   Following the jury's acquittal of Plaintiff on the stalking charges contained in the 1st indictment, Defendant Prosecutors should have dismissed the single charge 2nd indictment because they knew it lacked probable cause and violated the Double Jeopardy Clause of the 5th Amendment.

107.   The dismissal of a criminal charge or indictment that lacks probable cause and violates the Double Jeopardy Clause of the 5th Amendment is a ministerial or administrative function.

108.   Defendant Prosecutors' actions in not performing the administrative duty of dismissing a charge lacking probable cause and in violation of the 5th

Amendment to the United States Constitution and Georgia law resulted in Plaintiff being deprived of his liberty from August 7, 2009 until February 2, 2018– a period of 3,101 days.

109. The actions of Defendant Prosecutors of seeking to detain and have Plaintiff arrested for the December 3, 2007 act, were performed not only prior to having probable cause but with actual knowledge that no probable cause existed for aggravated stalking, as alleged in the 2nd indictment.

110. All of Defendant Prosecutors' actions, as alleged, were performed under color of state law.

111. All of Defendant Prosecutors' actions, as alleged, were performed under color of state law and with the specific intent to harm Plaintiff.

112. The acts of Defendant Prosecutors, as alleged, damaged Plaintiff.

**Count Two – Violation of 42 U.S.C. § 1983 – All Defendants**

113. Plaintiff incorporates the preceding paragraphs of the Complaint as if set forth herein verbatim.

114. The actions of Defendants, including John Does 1 – 3, in working in concert with one another (and Defendant Prosecutors) to have Plaintiff's *Motion for New Trial* continued and not heard for hearing for 2,780 days, deprived Plaintiff of his liberty and other clearly established rights afforded Plaintiff by the United States Constitution.

115.   Defendants' actions, in working in concert with one another to have Plaintiff's *Motion for New Trial* continued and not docketed for hearing for 2,780 days, were performed under color of state law.

116.   Defendants' actions in working in concert with one another to have Plaintiff's *Motion for New Trial* continued and not docketed for hearing for 2,780 days, were performed under color of state law and with the specific intent to harm Plaintiff.

117.   Defendants' actions, in working in concert with one another to have Plaintiff's *Motion for New Trial* continued and not docketed for hearing for 2,780 days, as alleged, damaged Plaintiff.

**Count Three – Violation of 42 U.S.C. § 1983 by Defendant Mauldin**

118.   Plaintiff incorporates the preceding paragraphs of the Complaint as if set forth herein verbatim.

119.   At all times relevant to this action, Defendant Mauldin was the District Attorney for the Western Judicial Circuit of the State of Georgia.

120.   As District Attorney, Defendant Mauldin was responsible for training and supervising the Assistant District Attorneys and others in his office.

121.   As District Attorney, Defendant Mauldin was responsible for creating and implementing policies and procedures for the District Attorney's office.

122.   Defendant Mauldin failed to implement a policy/practice/procedure to prevent the Assistant District Attorneys and others in his office from pursuing arrests and convictions of individuals on charges that lacked probable cause.

123.   Defendant Mauldin's failure to implement a policy/practice/procedure to prevent the Assistant District Attorneys and others in his office from pursuing arrests and convictions of individuals on charges that lacked probable cause constituted deliberate indifference to the consequences.

124.   Defendant Mauldin failed to implement a policy/practice/procedure to prevent the Assistant District Attorneys and others in his office from taking intentional acts to arrest and/or prosecute individuals on charges that violated the Double Jeopardy Clause of the 5th Amendment.

125.   Defendant Mauldin's failure to implement a policy/practice/procedure to prevent the Assistant District Attorneys and others in his office from taking intentional acts to arrest and/or prosecute individuals on charges that violated the Double Jeopardy Clause of the 5th Amendment constituted deliberate indifference to the consequences.

126.   Defendant Mauldin failed to implement a policy/practice/procedure to train the Assistant District Attorneys and others in his office regarding arrests/prosecutions that lacked probable cause.

127. Defendant Mauldin's failure to implement a policy/practice/procedure to train the Assistant District Attorneys and others in his office regarding arrests/prosecutions that lacked probable cause constituted deliberate indifference to the consequences.

128. Defendant Mauldin failed to implement a policy/practice/procedure to train the Assistant District Attorneys and other in his office regarding arrests/prosecutions that violated the 5th Amendment.

129. Defendant Mauldin's failure to implement a policy/practice/procedure to train the Assistant District Attorneys and others in his office regarding arrests/prosecutions that violated the 5th Amendment constituted deliberate indifference to the consequences.

130. Defendant Mauldin failed to supervise the Assistant District Attorneys and others in his office regarding arrests/prosecutions that lacked probable cause and prevent those arrests/prosecutions from taking place.

131. Defendant Mauldin's failure to supervise the Assistant District Attorneys and other in his office regarding arrests/prosecutions that lacked probable cause constituted deliberate indifference to the consequences.

132. Defendant Mauldin failed to supervise the Assistant District Attorneys and others in his office regarding arrests/prosecutions that violated the 5th Amendment.

133.  Defendant Mauldin's failure to supervise the Assistant District Attorneys and others in his office regarding arrests/prosecutions that violated the 5th Amendment constituted deliberate indifference to the consequences.

134.  In the alternative, Defendant Mauldin implemented a policy/practice/procedure for the Assistant District Attorneys and others in his office to do whatever it takes to secure convictions, even it results in arrests/prosecutions that violate the 4th and 5th Amendments to the United States Constitution and Georgia law.

135.  Defendant Mauldin's implementation of a policy/practice/procedure for the Assistant District Attorneys and others in his office to do whatever it takes to secure convictions, even it results in arrests/prosecutions that violate the 4th and 5th Amendments to the United States Constitution and Georgia law constituted deliberate indifference to the consequences.

136.  In the alternative, Defendant Mauldin implemented a policy/practice/procedure for the Assistant District Attorneys and others in his office to aggressively pursue convictions regardless of whether probable cause is absent.

137.  Defendant Mauldin's implementation of a policy/practice/procedure for the Assistant District Attorneys and others in his office to aggressively pursue

24

convictions regardless of whether probable cause is absent constituted deliberate indifference to the consequences.

138. In the alternative, Defendant Mauldin implemented a policy/practice/procedure for the Assistant District Attorneys and others in his office to aggressively pursue convictions regardless of whether they violate the 4th and 5th Amendments to the United States Constitution and Georgia law.

139. Defendant Mauldin's implementation of a policy/practice/procedure for the Assistant District Attorneys and others in his office to aggressively pursue convictions regardless of whether they violate the 4th and 5th Amendments to the United States Constitution and Georgia law constituted deliberate indifference to the consequences.

140. In the alternative, Defendant Mauldin implemented a policy/practice/procedure that encouraged the Assistant District Attorneys and others in his office to ignore constitutional protections if it meant securing a conviction.

141. Defendant Mauldin's implementation of a policy/practice/procedure that encouraged Assistant District Attorneys and others in his office to ignore constitutional protections if it meant securing a conviction constituted deliberate indifference.

142.    In    the    alternative,    Defendant    Mauldin    failed    to    implement    a
policy/practice/procedure that encouraged the Assistant District Attorneys
and others in his office to follow and honor constitutional protections even if
it meant not securing a conviction.

143.    Defendant Mauldin's failure to implement a policy/practice/procedure that
encouraged the Assistant District Attorneys and others in his office to follow
and honor constitutional protections even if it meant not securing a conviction
constituted deliberate indifference to the consequences.

144.    The acts/omissions of Defendant Mauldin, as alleged in this Count resulted in
the seizure of Plaintiff and deprivation of his liberty in violation of the 4th, 5th
and 14th Amendments.

145.    The acts/omissions of Defendant Mauldin, as alleged in this Count constituted
a violation of 42 U.S.C. § 1983.

146.    The acts/omissions of Defendant Mauldin, as alleged in this Count damaged
Plaintiff.

**Count Four – Violation of 42 U.S.C. § 1983 by Does 1 – 3**

147.    Plaintiff incorporates the preceding paragraphs of the Complaint as if set forth
herein verbatim.

148. At all times relevant to this action, Does 1 – 3 were Court officials with the Oconee County Clerk of Superior Court's Office or some other Court office acting under color of law.

149. As Court officials, Does 1 – 3 were responsible for training and supervising the court personnel regarding the docketing and setting of motions.

150. As Court officials, Does 1 – 3 were responsible for creating and implementing policies and procedures for the clerk's office or other court office.

151. Does 1 – 3 failed to implement a policy/practice/procedure to prevent motions, including motions for new trial, to linger without a hearing for lengthy periods especially not for over 6 ½ years.

152. The failure of Does 1 – 3 to implement a policy/practice/procedure to prevent motions for lingering without hearing for lengthy periods constituted deliberate indifference to the consequences.

153. Does 1 – 3 failed to implement a policy/practice/procedure to train personnel to docket and set for hearing motions, including motions for new trials.

154. The failure of Does 1 – 3 to implement a policy/practice/procedure to train personnel to docket and set for hearing motions, including motions for new trials constituted deliberate indifference to the consequences.

155.   Does 1 – 3 failed to supervise personnel to see that motions, including motions for new trials, were docketed and set for hearings in a timely manner and did not linger for lengthy periods such as 6 ½ years.

156.   The failure of Does 1 – 3 to supervise personnel to make sure that motions, including motions for new trials, did not linger for lengthy periods constituted deliberate indifference to the consequences.

157.   In the alternative, Does 1 – 3, either individually or in concert with one another, implemented a policy/practice/procedure to act in concert with others, including the named Defendants in this action, to see to it that motions, including motions for new trials, were not docketed/set for hearing for long periods of time.

158.   The actions of Does 1 – 3 individually or in concert with one another, in implementing a policy/practice/procedure to act in concert with others, including the named Defendants in this action, to see to it that motions, including motions for new trials, were not docketed/set for hearing for long periods of time constituted deliberate indifference to the consequences.

159.   In the alternative, Does 1 – 3 intentionally failed to docket and/or set for hearing Plaintiff's *Motion for New Trial*, and in doing so violated the clearly established rights afforded him by the 4th and 5th Amendments to the United States Constitution.

160. The acts/omissions of Does 1 – 3, as alleged in this Count resulted in the seizure of Plaintiff and deprivation of his liberty in violation of the 4th, 5th and 14th Amendments.

161. The acts/omissions of Does 1 – 3, as alleged in this Count constituted a violation of 42 U.S.C. § 1983.

162. The acts/omissions of Does 1 – 3, as alleged in this Count damaged Plaintiff.

**Count Five –Malicious Prosecution – John Doe 4**

163. Plaintiff incorporates the preceding paragraphs of the Complaint as if set forth herein verbatim.

164. Pleading in addition and in the alternative, John Doe 4 who, upon information and belief was a non-lawyer employee of the District Attorneys' office for the Western Judicial Circuit, instituted or continued the prosecution of Plaintiff on the flawed aggravated stalking charge and did so with malice and without probable cause.

165. The flawed aggravated stalking charge terminated in Plaintiff's favor.

166. The acts of John Doe 4, as pleaded in this Count, caused Plaintiff damages.

**Count Six – Malicious Prosecution by Defendant Prosecutors**

167. Plaintiff incorporates the preceding paragraphs of the Complaint as if set forth herein verbatim.

168.   Defendant Prosecutors instituted and/or continued the prosecution of Plaintiff on the 2nd indictment when Defendant Prosecutors knew:

   a.   That the charge lacked probable cause;

   b.   That O.C.G.A. § 16-1-8 prohibited the prosecution of Plaintiff on the 2nd indictment;

   c.   The Double Jeopardy Clause of the 5th Amendment to the United States Constitution prohibited the prosecution of Plaintiff on the 2nd indictment; and

   d.   Article I, § 1, ¶ XVIII of the Georgia Constitution prohibited the prosecution of Plaintiff on the 2nd indictment.

169.   The prosecution of Plaintiff on the 2nd indictment was an intentional act by Defendant Prosecutors with the specific intent to cause Plaintiff harm.

170.   Defendant Prosecutors acted with malice in continuing the prosecution of Plaintiff on the 2nd indictment, even after Defendant Prosecutors knew that 2nd indictment (a) lacked probable cause; (b) was prohibited by O.C.G.A. § 16-1-8; (c) was prohibited by the Double Jeopardy Clause of the 5th Amendment to the United States Constitution; and (d) was prohibited by Article I, § 1, ¶ XVIII of the Georgia Constitution.

171.   The prosecution of Plaintiff on the 2nd indictment was an intentional act by Defendant Prosecutors with the specific intent to cause Plaintiff harm.

172. The prosecution of Plaintiff on the 2nd indictment terminated in Plaintiff's favor.

173. The prosecution of Plaintiff on the 2nd indictment caused Plaintiff damages.

**Count Seven – Intentional Infliction of Emotional Distress**

174. Plaintiff incorporates the preceding paragraphs of the Complaint as if set forth herein verbatim.

175. Defendants' acts, as alleged in this Complaint, were Defendants' intentional acts designed to injure Plaintiff.

176. Defendants' acts, as alleged in this Complaint, were extreme and outrageous.

177. Defendants' acts, as alleged in this Complaint, caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff prays:

A. That all allowable special and general damages be awarded to Plaintiff in an amount shown by the evidence and determined by the enlightened conscious of the jury;

B. That punitive damages be awarded against Defendants when allowable by law in an amount to be determined by the enlightened conscious of the jury to deter Defendants and others from similar misconduct in the future;

C. That a trial by jury be had on all issues permitted;

D.  That attorneys' fees and expenses of litigation be awarded as authorized under the law;

E.  Such other further equitable or monetary relief as the Court deems just and proper.

Dated:     October 5, 2021.

**HALL & LAMPROS, LLP**

*/s/ Andrew Lampros*
Andrew Lampros
Ga. Bar #432328

400 Galleria Pkwy SE
Suite 1150
Atlanta, GA 30339
Tel.: (404) 876-8100
Fax: (404) 876-3477
alampros@hallandlampros.com

*Attorneys for Plaintiff*