IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| MICHAEL CHARLES WARD, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 3:21-CV-111 (CAR)** |
| | : | |
| JAMES V. CHAFIN, individually; | : | |
| JON R. FORWOOD, individually; | : | |
| KENNETH W. MAULDIN, individually; | : | |
| JOHN DOES 1-4, individually; | : | |
| | : | |
|     Defendants. | : | |
| | : | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Michael Charles Ward filed this action under 42 U.S.C. § 1983 against three state court prosecutors and four unidentified individuals employed with the Oconee County Superior Court's Office or some other court office. Plaintiff asserts federal and Georgia state law claims, including malicious prosecution, against Defendants after the Georgia Court of Appeals overturned his state court criminal conviction because it violated the Double Jeopardy Clause of the Fifth Amendment. Defendants Chafin, Forwood, and Mauldin ("Defendant Prosecutors" or "Defendants") now move to dismiss all claims against them.

As explained below, Defendant Prosecutors are entitled to absolute prosecutorial immunity or, in the alternative, qualified immunity on Plaintiff's federal claims, and

official immunity under the Georgia Tort Claims Act on Plaintiff's state law claims. Thus, Defendant Prosecutors' Motion to Dismiss [Doc. 17] is **GRANTED**.[1] The Court finds oral argument on this Motion is unnecessary, and therefore **DENIES** Plaintiff's Request for Oral Argument [Doc. 20]. The Court *sua sponte* **DISMISSES** John Does 1-4 under the fictitious party pleading rule.

## BACKGROUND

Summary of Allegations

At all times relevant to Plaintiff's claims, Defendant Mauldin was the District Attorney for the Western Judicial District of the State of Georgia, and Defendants Forwood and Chafin were assistant prosecutors. In 2007, a grand jury indicted Plaintiff for misdemeanor stalking; in 2008, Defendant Prosecutors sought and received a second indictment against Plaintiff for aggravated stalking. In 2009, Defendants tried Plaintiff on the misdemeanor stalking charge, and the jury acquitted him. In 2010, Defendants tried Plaintiff on the aggravated stalking charge, and the jury found him guilty. The court sentenced Plaintiff to serve ten years imprisonment.

Plaintiff, proceeding *pro se* in the Superior Court, timely filed a motion for new trial, but the Superior Court did not rule on the motion until January 2018, over 7 years after Plaintiff filed the motion for new trial. The Superior Court denied the motion, and

---

[1] Defendant's Motion to Dismiss Plaintiff's Complaint [Doc. 7] is **DENIED AS MOOT** because Plaintiff filed an Amended Complaint.

Plaintiff appealed his conviction to the Georgia Court of Appeals. A month later, in February 2018, after serving the entirety of his sentence, Plaintiff was released from incarceration. On July 2, 2019, the Court of Appeals reversed Plaintiff's conviction finding it violated Plaintiff's rights under the Double Jeopardy Clause.

Plaintiff timely filed this action contending Defendant Prosecutors investigated, indicted, and prosecuted Plaintiff for aggravated stalking without probable cause and in violation of his constitutional rights, and conspired with unidentified court personnel to delay ruling on his motion for new trial.

Specific Allegations and Facts from Court Records

On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled facts in his complaint as true.[2] But the Court may take judicial notice of matters of public record, including court records.[3] Thus, the following facts are taken from Plaintiff's Amended Complaint, and official court records from Oconee County Superior Court and the Georgia Court of Appeals.

In November 2007, Plaintiff was arrested for misdemeanor stalking and other charges and then released on a "no-contact" bond with a condition that Plaintiff have no contact with the alleged victim.[4] Later in November, a grand jury returned an

---

[2] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

[3] *Serpentfoot v. Rome City Comm'n*, 322 F. App'x 801, 807 (11th Cir. 2009); *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811-12 (11th Cir. 2015).

[4] Am. Compl. ¶ 36 [Doc. 13].

indictment charging Plaintiff with multiple counts of burglary, computer theft, theft by taking, possession of tools in commission of a crime, and misdemeanor stalking.[5] In early December 2007, Plaintiff ordered a book off Amazon and had it delivered to the victim's house.[6] Thus, from December 3, 2007, through January 23, 2008, Defendant Prosecutors "reviewed and investigated" Plaintiff sending the book to the alleged victim.[7]

Defendant Prosecutors then "made the decision to charge Plaintiff with aggravated stalking based on the single act of sending a book in violation of a protective order" and "based on their own investigation."[8] Defendants "took steps" to have Plaintiff arrested for violating his no-contact bond,[9] and in January 2008, Defendants "presented the information they had gathered from their investigation" to a grand jury.[10] The grand jury then returned a second indictment against Plaintiff charging him with one count of felony aggravated stalking.[11]

Plaintiff alleges Defendant Prosecutors knew Georgia law requires the aggravated stalking charge to include "a pattern of harassing and intimidating

---

[5] *Ward v. State*, 351 Ga. App. 490, 492 (2019); Am. Compl. at ¶¶ 37, 44.
[6] *Ward*, 351 Ga. App. at 492; *see also* Am. Compl. at ¶ 47 (victim received a book from Amazon that Plaintiff "had apparently ordered").
[7] Am. Compl. at ¶ 48.
[8] *Id.* at ¶¶ 51-52.
[9] *Id.* at ¶ 53.
[10] *Id.* at ¶ 55.
[11] *Id.*

behavior"; knew that Plaintiff's single act of sending the book in violation of the protective order did not establish such a pattern; and therefore knew that the aggravated stalking indictment was insufficient to establish probable cause for Plaintiff's subsequent arrest and prosecution.[12]

In August 2009, Defendant Prosecutors tried Plaintiff on the misdemeanor stalking charge from the first indictment, but not the aggravated stalking charge in the second indictment.[13] After a four-day trial, the jury acquitted him of the misdemeanor stalking charge.[14]

Plaintiff alleges the jury's acquittal angered Defendant Prosecutors,[15] and even though they knew the aggravated stalking charge lacked probable cause, and the Double Jeopardy Clause and Georgia law prohibited them from prosecuting the aggravated stalking charge, they refused to dismiss that indictment.[16] Instead, in January 2010, five months after the jury had acquitted him of misdemeanor stalking, Defendants tried Plaintiff for aggravated stalking. Defendants used some of the same evidence they relied on in the first trial, and the jury convicted him of aggravated

---

[12] *Id.* at ¶¶ 56-59.

[13] *Id.* at ¶ 64.

[14] *See Ward*, 351 Ga. App. at 492; Am. Compl. at ¶ 65. The jury also acquitted Plaintiff of the burglary and computer theft charges but found him guilty of possession of tools in commission of a crime.

[15] Am. Compl. at ¶ 66.

[16] *Id.* at ¶¶ 67-86.

stalking.[17] The Superior Court then sentenced Plaintiff to serve ten years imprisonment.[18]

Plaintiff began serving his sentence immediately upon conviction.[19] On February 3, 2010, he timely filed a motion for a new trial, contending that the verdict was contrary to law and evidence.[20] The Superior Court set a hearing on Plaintiff's motion for new trial for April 20, 2010,[21] but Plaintiff alleges "Defendant Prosecutors acted in concert with each other and Defendant John Does 1-4 to have Plaintiff's Motion for New Trial continued from the set April 20, 2010 date."[22]

The Superior Court then reset the hearing on Plaintiff's motion for new trial to October 19, 2010.[23] Again, Plaintiff alleges Defendant Prosecutors acted in concert with each other and Defendant John Does 1-4 to have that hearing continued.[24] The Superior Court did not hold a hearing on the motion for new trial until over seven years later, on September 21, 2017.[25] Defendants never filed a written response to the motion for new trial, and Plaintiff remained incarcerated.[26] Plaintiff alleges Defendant Prosecutors "let

---

[17] *Id.* at ¶¶ 87-88.
[18] *Id.* at ¶ 88.
[19] *Id.* at ¶ 89.
[20] *Id.* at ¶ 94.
[21] *Id.* at ¶ 95.
[22] *Id.* at ¶ 97.
[23] *Id.* at ¶ 98.
[24] *Id.* at ¶ 99.
[25] *Id.* at ¶ 100.
[26] *Id.* at ¶ 102.

the case languish for years while Plaintiff was unconstitutionally imprisoned."[27]

On December 14, 2017, the Superior Court denied Plaintiff's motion for new trial,[28] almost 8 years after the jury found him guilty, and on January 8, 2018, Plaintiff timely appealed his aggravated stalking conviction to the Georgia Court of Appeals.[29] In February 2018, while his appeal was pending, Plaintiff was released from custody having served his complete sentence of incarceration.[30]

On July 19, 2019, a majority panel of the Georgia Court of Appeals reversed and vacated Plaintiff's conviction holding that his aggravated stalking conviction violated the Double Jeopardy Clause, with one judge dissenting.[31] The Supreme Court of Georgia denied the petition for writ of certiorari, and thus on March 13, 2020, Plaintiff's criminal proceeding on the second indictment terminated in his favor. On November 15, 2021, Plaintiff timely filed this action. Defendant Prosecutors now seek to dismiss all claims.

## STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is

---

[27] *Id.* at ¶105.
[28] Doc. 7-9.
[29] Am. Compl. ¶ 107.
[30] *Id.* at ¶ 109.
[31] *Ward v. State*, 351 Ga. App. 490 (2019).

entitled to relief. While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."[32] To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[33] A claim is plausible on its face where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[34] The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[35] "[T]he court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."[36]

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint.[37] "Threadbare recitals of the elements of a cause of

---

[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[33] *Id.*

[34] *Id.*

[35] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[36] *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

[37] *Iqbal*, 556 U.S. at 678.

action, supported by mere conclusory statement, do not suffice."[38] The Court need not "accept as true a legal conclusion couched as a factual allegation."[39]

The Court also notes that exhibits attached to pleadings become part of a pleading,[40] and the Court can consider public records when deciding a motion pursuant to Federal Rule of Civil Procedure 12(b) without converting the motion to a motion for summary judgment.[41]

## ANALYSIS

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 asserting claims against Defendant Prosecutors in their individual capacities for violations of the Fourth Amendment's Seizure Clause, the Fifth Amendment's Double Jeopardy Clause, and Georgia state-law claims for malicious prosecution and intentional infliction of emotional distress. Plaintiff also asserts Defendants conspired with the John Doe Defendants to delay his right to appeal his criminal conviction. As explained below, Defendant Prosecutors are entitled to prosecutorial immunity, or in the alternative qualified

---

[38] *Id.*

[39] *Twombly*, 550 U.S. at 570.

[40] Fed. R. Civ. P. 10(c).

[41] *Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n*, 177 F. App'x 52, 53 (11th Cir. 2006) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. Public records are among the permissible facts that a district court may consider.").

immunity, on Plaintiff's § 1983 claims and official immunity under the Georgia Torts

Claims Act on Plaintiff's state-law claims.

## I.     False Arrest/False Imprisonment

As an initial matter, any claim for false arrest or false imprisonment against

Defendants must be dismissed because (1) it would be barred by the statute of limitations

and (2) malicious prosecution is Plaintiff's exclusive remedy.

Claims under section 1983 "are tort actions, subject to the statute of limitations

governing personal injury actions in the state where the [suit] has been brought."[42] Under

Georgia law, the statute of limitations period for personal injury actions is two years.[43]

The accrual date of claims under section 1983, however, "is a question of federal law that

is not resolved by reference to state law."[44] "It is well established that a federal claim

accrues when the prospective plaintiff knows or has reason to know of the injury which

is the basis of the action."[45]

Plaintiff alleges he was arrested and detained in 2007 and 2008. Plaintiff did not

file this action until February 5, 2021, over twelve years after any cause of action for false

arrest or false imprisonment accrued and well past the two-year limitations period. Thus,

any claim for false arrest or false imprisonment is time-barred.

---

[42] *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).
[43] O.C.G.A. § 9-3-33.
[44] *Wallace v. Kato*, 549 U.S. 384, 388 (2007).
[45] *McNair*, 515 F.3d at 1174.

Moreover, malicious prosecution is Plaintiff's exclusive remedy because he alleges he was arrested pursuant to a warrant.[46] Section 1983 causes of action for false arrest and false imprisonment arise from "detention *without legal process*."[47] The issuance of an arrest warrant, even if allegedly invalid, constitutes legal process.[48] Thus, where an arrest is made pursuant to a warrant, a cause of action for false arrest or false imprisonment will not lie; rather, the tort of malicious prosecution is the exclusive remedy for a confinement pursuant to legal process.[49]

## II.    Prosecutorial Immunity

Defendant Prosecutors are entitled to prosecutorial immunity on Plaintiff's § 1983 claims. The Supreme Court has held that absolute immunity exists for prosecutors in a § 1983 action.[50] "A prosecutor is entitled to absolute immunity for all actions he takes while performing his functions as an advocate for the government" in the judicial phase of the criminal process.[51] "The prosecutorial function includes the initiation and pursuit of a criminal prosecution, the presentation of the state's case, and other actions that are

---

[46] Compl. ¶ 121, p. 22.

[47] *Id.* at 389.

[48] *Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014) (per curiam); *see also Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016).

[49] *See Wallace*, 549 U.S. at 389-90; *Carter*, 557 F. App'x at 906.

[50] *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).

[51] *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004).

'intimately associated with the judicial phase of the criminal process,' such as court appearances."[52] "Prosecutorial immunity extends to 'filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, . . . [and] threatening . . . further criminal prosecutions."[53] But prosecutorial immunity does not apply "when a prosecutor is not acting as an officer of the court but is instead engaged in certain investigative or administrative tasks,"[54] or "when a prosecutor knowingly makes false statements of fact in an affidavit supporting an application for an arrest warrant."[55]

## A. 4th Amendment Malicious Prosecution Claims

Plaintiff alleges Defendant Prosecutors violated his Fourth Amendment rights against unreasonable seizures and unlawful detentions (termed a malicious prosecution) when they (1) investigated and then presented the aggravated stalking charge to the grand jury, knowing there was no probable cause to indict him; (2) failed to dismiss the aggravated stalking indictment after the jury acquitted Plaintiff of the misdemeanor

---

[52] *Hoffman v. Office of State Attorney, Fourth Judicial Circuit*, 793 F. App'x 945, 950 (11th Cir. 2019) (quoting *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1142 (11th Cir. 2017), and citing *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) ("Prosecutors are immune for appearances before a court and conduct in the courtroom. . . .")).
[53] *Id.* (quoting *Hart*, 587 F.3d at 1295 (quotation marks omitted)).
[54] *Hart*, 587 F.3d at 1296.
[55] *Hart*, 587 F.3d at 1296.

stalking charge in the first trial; and (3) presented duplicate evidence at trial knowing it violated Plaintiff's double jeopardy rights. Defendant Prosecutors argue they are absolutely immune from suit because Plaintiff's claims rest upon Defendants' acts in initiating and continuing his criminal prosecution. The Court agrees.

"[P]rosecutors enjoy absolute immunity for the initiation and pursuit of criminal prosecution."[56] "The official seeking absolute immunity bears the burden of showing such immunity is justified."[57] Absolute immunity "extends to a prosecutor's acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State."[58]

Plaintiff's claims all rest upon Defendant Prosecutors' acts as advocates for the State in preparing to initiate judicial proceedings, presenting the case to the grand jury to obtain an indictment, participating in the trial, and sustaining the conviction after trial. Defendants "cannot be held liable for initiating and continuing prosecution[ ] against the plaintiff[ ], even assuming [they] lacked probable cause at the outset and pursued the prosecutions after receiving overwhelming exculpatory evidence."[59]

---

[56] *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)).

[57] *Jones*, 174 F.3d at 1281 (citation omitted).

[58] *Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010) (citations and internal quotation marks omitted).

[59] *Hoffman*, 793 F. App'x at 950 (citing *Hart*, 587 F.3d at 1295).

Plaintiff argues Defendants are not entitled to prosecutorial immunity because Defendants acted in investigative and administrative roles. While it is true that a prosecutor is not entitled to absolute immunity when functioning as an investigator or performing administrative tasks,[60] Plaintiff's alleged facts do not plausibly show Defendants engaged in any investigative or administrative tasks. Plaintiff alleges vague and conclusory allegations that amount to legal conclusions they performed administrative tasks and mere labels that Defendants were functioning as investigators.

Plaintiff legally concludes that in "reviewing and investigating the action of Plaintiff ordering the book" Defendant Prosecutors "were performing investigative or administrative functions,"[61] and that Defendants' failure to dismiss the aggravated stalking indictment after the jury found him not guilty was an "administrative task." These legal conclusions are simply couched as factual allegations, and the Court is not required to accept them as true.[62]

Likewise, Plaintiff's characterizations of Defendants' actions as investigative are insufficient to survive a motion to dismiss. Plaintiff conclusively alleges that Defendant

---

[60] *See Riveria*, 359 F.3d at 1353.

[61] *Id.* at ¶ 49, p. 10.

[62] *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Moreover, the Court is highly skeptical that seeking to dismiss an indictment is an administrative task. *See Peterson v. Bernardi*, 719 F. Supp. 2d 419 (D.N.J. 2010) (prosecutor's decision whether to consent to dismissal of murder conviction was central to traditional advocative role of prosecutor).

Prosecutors "reviewed and investigated th[e] single act of Plaintiff sending a book via Amazon,"[63] "undertook to investigate and have Plaintiff charged with aggravated stalking,"[64] "made their charging decision based upon their own investigation,"[65] and "presented the information that they had gathered from their investigation to a grand jury."[66]

A prosecutor functions as an investigator when "searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested."[67] Examples include personally attesting to the truth of statements in a certification to obtain an arrest warrant,[68] visiting a crime scene to identify evidence,[69] fabricating expert testimony,[70]  participating in the search of a suspect's residence,[71] providing legal advice to police,[72] or participating in press conferences[73]—engaging in investigative functions normally performed by the police.

---

[63] Am. Compl. ¶48, p. 10.

[64] *Id.* at ¶50, p. 10.

[65] *Id.* at ¶52, p. 11.

[66] *Id.* at 55, p. 11.

[67] *Buckley*, 509 U.S. at 273.

[68] *Kalina v. Fletcher*, 522 U.S. 118, 121 (1997).

[69] *See id.* at 274-75.

[70] *Buckley*, 509 U.S. at 275-77.

[71] *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1280 (11th Cir. 2002).

[72] *Burns*, 500 U.S. at 496.

[73] *Id.*

Plaintiff alleges no facts from which the Court can reasonably infer that Defendants in fact acted as investigators or engaged in administrative tasks. There is no allegation that Defendants, rather than investigators, personally obtained any information or participated in any search for information to charge Defendant with aggravated stalking. The allegations simply show that Defendants evaluated information that Plaintiff sent a book to the victim from Amazon, and they determined such action was sufficient to present to the grand jury for an aggravated stalking indictment. These are actions any prosecutor undertakes. "There is a difference between the advocate's role in *evaluating evidence* . . . as he prepares for trial . . . and the detective's role in searching for the clues . . . that might give him probable cause to recommend that a suspect be arrested."[74] Plaintiff alleges no facts showing Defendants searched for clues to charge him with aggravated stalking or otherwise engaged in any investigative or administrative role. The Court determines immunity based on alleged acts, not Plaintiff's characterization of those acts.

But even if Plaintiff sufficiently alleged Defendants performed investigative acts, they are still entitled to absolute immunity because Plaintiff does not allege Defendants' investigatory acts deprived him of any constitutional rights. Plaintiff's allegations do not

---

[74] *Buckley*, 509 U.S. at 273.

reveal how Defendants' investigation led to any unlawful seizure. Plaintiff's seizure resulted from the grand jury process. It is true that if a grand jury proceeding is tainted by fabricated evidence, "and the result is that probable cause is lacking, then the ensuing detention violates the confined person's Fourth Amendment rights."[75] But Plaintiff does not allege Defendants committed any unlawful act to cause the grand jury to indict him. Plaintiff does not allege the grand jury returned the indictment because Defendants fabricated or planted evidence, provided legal advice to police, or falsely attested to any documents such as a false affidavit or certification about Plaintiff's charge that was presented to the grand jury. On the contrary, Plaintiff does not contest any information that Defendants presented to the grand jury, and in fact admitted that he sent his alleged victim the book during his state court criminal proceedings.[76]

The Court can draw no reasonable inference that Defendants' investigation caused Plaintiff's alleged constitutional deprivations. Instead, Plaintiff's alleged constitutional deprivations—the unlawful seizure and detention after he was indicted and convicted by a jury—are based on Defendants' actions in presenting the indictment to the grand jury without probable cause and continuing to prosecute the case knowing such prosecution

---

[75] *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920, n. 8 (2017).
[76] *Ward*, 351 Ga. App. at 492, fn 7 ("Ward admitted at a hearing on February 8, 2008, that he sent the book to the victim and has never denied sending the book.").

was a violation of Plaintiff's double jeopardy rights. These actions are clearly within the ambit of initiating the prosecution and presenting the State's case, and prosecutors are absolutely immune for prosecutorial conduct before a grand jury and for initiating and pursing even a baseless prosecution.[77] Because Defendants' alleged unlawful conduct arises from their roles as prosecutors participating in the judicial process and prosecuting Plaintiff's criminal case, they are entitled to absolute immunity on Plaintiff's Fourth Amendment malicious prosecution claims.

### B. 5th Amendment Double Jeopardy Claim

Defendant Prosecutors are also entitled to prosecutorial immunity on Plaintiff's double jeopardy claims. Plaintiff alleges Defendants prosecuted Plaintiff aggravated stalking knowing such prosecution violated the Double Jeopardy Clause. But, like the malicious prosecution claims, Plaintiff's double jeopardy claims stem from Defendants' roles as advocates for the State and "activities that [were] intimately associated with the judicial phase of [Plaintiff's] criminal process."[78] Plaintiff does not allege Defendants fabricated any evidence,[79] or violated his rights while undertaking investigative or

---

[77] *Rehberg*, 611 F.3d at 837-38 ("Prosecutors are immune for appearances in judicial proceedings, including prosecutorial conduct before the grand jury."); *Watkins v. Dubreuil*, 820 F. App'x 940, 945 (11th Cir. 2020) (baseless prosecution).

[78] *Hart v. Hodges*, 587 F.3d 1288, 1294, 1295 (11th Cir. 2009) (internal quotation marks and citations omitted).

[79] *See Buckley*, 509 U.S. at 272.

administrative functions[80] that would cause immunity not to attach. Plaintiff's double jeopardy allegations relate to Defendants' prosecutorial duties, and thus, Defendants are entitled to prosecutorial immunity.[81]

### C. Conspiracy to Delay Appeal

This Court agrees with the Georgia Court of Appeals that the over 7-year delay in this case between the time of Plaintiff's trial and the ruling on the motion for new trial is troublesome.[82] But Defendant Prosecutors are entitled to absolute immunity on Plaintiff's claims that they conspired with the John Doe defendants to delay Plaintiff's appeal. Prosecutorial immunity extends to a prosecutor's actions in "pursuing a criminal prosecution," and it extends "to a prosecutor's conduct in handling appeals"; otherwise, it "would 'prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system.'"[83]

---

[80] *See Kalina v. Fletcher*, 522 U.S. 118, 126 (1997).

[81] Other courts have similarly found that absolute immunity applies where a prosecutor brings a case allegedly in violation of the double jeopardy clause. *See Nivens v. Gilchrist*, 444 F.3d 237, 250 (4th Cir. 2006) (plaintiffs brought § 1983 action alleging the pending prosecution violated their double jeopardy rights, and court held prosecutor entitled to absolute immunity despite the alleged constitutional violation because "the actions complained of . . . form the essence of [the defendant's] prosecutorial duties[.]"); *Anilao v. Spota*, 774 F. Supp. 2d 457, 488 (E.D.N.Y. 2011) (collecting cases involving prosecutions alleged in violation of the double jeopardy clause).

[82] *Ward*, 351 Ga. App. at 493.

[83] *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979) (quoting *Imbler*, 424 U.S. at 430).

Plaintiff's vague and conclusory allegations that Defendants' conduct in the conspiracy was investigative and administrative are insufficient to avoid absolute immunity.[84] Plaintiff alleges no facts from which this Court can reasonably infer Defendants performed any investigative or administrative act in the alleged conspiracy to delay Plaintiff's appeal. Instead, Defendants' alleged involvement in the alleged conspiracy to delay Plaintiff's appeal falls within their roles as advocates for the State to sustain Plaintiff's criminal conviction after trial.[85] "If prosecutorial immunity means anything, it means that prosecutors who take on the thankless task of public prosecution [are] not answerable to every person wrongfully prosecuted who can find a lawyer

---

[84] Plaintiff alleges "[t]he setting of a motion for hearing, such as Plaintiff's *Motion for New Trial*, is an administrative function or act" [Am. Compl. ¶ 96]; Defendants had a duty to ensure Plaintiff's motion was litigated and decided without delay [*Id.* at ¶ 105]; Defendants acted in concert with the John Doe defendants to have his motion and any hearing continued [*Id.* at ¶¶ 97, 99, and 101]; they never filed a written response to the motion [*Id.* at ¶ 102]; and instead, they "avoided a trial court decision" and "let the case languish for years" [*Id.* at ¶ 105].

[85] Other courts have similarly found delay or denial of postconviction relief to be within the scope of a prosecutor's absolute immunity. *See Smith v. Shelby County, Tenn.*, 3 F. App'x 436 (6th Cir. 2001) (prosecutor entitled to absolute immunity in which defendant alleged violation of rights by delaying adjudication of his petition for post-conviction relief and motion to set aside his guilty pleas); *McClain v. Kitchen*, 505 F. Supp. 682 (E.D. Mo. 1981) (prosecutor absolutely immune where plaintiff alleged he conspired to dismiss a motion for postconviction relief in order to conceal constitutional violations which occurred during trial); *Winters v. Palumbo*, 512 F. Supp 7 (E.D. Mo. 1980) (prosecutorial immunity protected state attorney from liability in alleged conspiracy to delay the postconviction hearing since he was the advocate for the state in pursuit of criminal prosecution).

willing to alleged that the prosecutor filed charges in bad faith, or for evil motives, or as a conspirator."[86]

### D. Supervisory Liability

Plaintiff also brings supervisory liability claims against Defendant Mauldin in his supervisory role as the District Attorney for the Western Judicial Circuit of the State of Georgia. A supervisor is not liable under § 1983 for the unconstitutional acts of his subordinates unless he either "directly participated in the unconstitutional conduct" or "a causal connection exits between the supervisor's actions and the alleged constitutional violation."[87] A causal connection can be shown where a supervisor's policy or custom results in deliberate indifference to constitutional rights or "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."[88]

Defendant Mauldin is also entitled to prosecutorial immunity because Plaintiff's supervisory liability claims against him are directly connected to the prosecutors' conduct in Plaintiff's criminal prosecution. "[W]here a prosecutor is entitled to absolute immunity for certain conduct, a supervisory prosecutor should likewise be entitled to

---

[86] *Elder v. Athens-Clarke County, Georgia*, 54 F.3d 694, 695 (11th Cir. 1995).
[87] *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1047-48 (11th Cir. 2014).
[88] *Cottone v. Jenne*, 326 f.3d 1352, 1360 (11th Cir. 2003) (quotation marks omitted).

absolute immunity for supervision or training of that same conduct."[89] "Were the rule otherwise, prosecutors' offices would be subject to suit 'in virtually every case in which a line prosecutor makes a mistake for which he is personally immune.' And that, in turn, would undermine the primary purpose of prosecutorial immunity, which is to 'protect the proper functioning of the office,' rather than the individual prosecutor."[90] Thus, because the Defendant Prosecutors are entitled to absolute immunity for their conduct, Defendant Mauldin is likewise entitled to absolute immunity for supervising that conduct.

Even if Defendant Mauldin was not entitled to absolute immunity, Plaintiff's claims must still be dismissed because Plaintiff fails to allege any supporting factual allegations to support his claims. Instead, his claims are supported by conclusory allegations with no "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[91] Plaintiff's allegations are merely "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice."[92]

---

[89] *Van de Kamp v. Goldstein*, 555 U.S. 335, 345-46 (2009).

[90] *Hoffman*, 793 F. App'x at 954 (quoting *Schneyder v. Smith*, 653 F.3d 313, 333-34 (3d Cir. 2011) and *Van de Kamp*, 555 U.S. at 345-47).

[91] *Id.*

[92] *Iqbal*, 556 U.S. at 663.

### III.   **Qualified Immunity**

Even if absolute immunity does not shield Defendant Prosecutors, Plaintiff's claims must be dismissed because Defendants are entitled to qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[93] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[94] When properly applied, "it protects all but the plainly incompetent or those who knowingly violate the law."[95] When an officer invokes qualified immunity, the initial burden is on the official to show that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.[96]

Plaintiff does not dispute Defendants were acting within the scope of their discretionary authority when any of the allegedly wrongful acts occurred. Indeed, Plaintiff clearly alleges Defendant Prosecutors acted within the scope of their official

---

[93] *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (internal quotation marks omitted).
[94] *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011).
[95] Id.
[96] *Lee v. Ferraro*, 284 F.3d 1188, 1194 (2002); *See also, Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019), cert. denied, (June 15, 2020) (Although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss.")

duties or employment as prosecutors when the alleged misconduct occurred.[97] Thus, Defendants have satisfied their initial burden that they were acting within the scope of their discretionary authority, and the burden now shifts to Plaintiff to show that a violation of a clearly established constitutional right occurred.[98]

"'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."[99] "A constitutional right is clearly established only if 'every reasonable official would interpret controlling precedent to establish the particular right the plaintiff seeks to apply' and 'the unlawfulness of the officer's conduct follows immediately from the conclusion that the right was firmly established.'"[100]

### A. Fourth Amendment Malicious Prosecution Claims

Plaintiff fails to sufficiently allege Defendants violated his clearly established right to be free from malicious prosecution. To state a claim for federal malicious prosecution under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious

---

[97] Am. Compl., ¶25 ("At all times relevant to this action, Defendant Chafin was employed as an assistant district attorney by the Western Judicial Circuit of the State of Georgia and was acting within the scope of his employment and under color of law."); ¶ 29 (same allegations for Defendant Forwood); ¶ 33 (same allegations for Defendant Mauldin).

[98] *Pearson v. Callahan*, 555 U.S. 232 (2009).

[99] *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted).

[100] *Williams v. Aguirre*, 965 F.3d 1147, 1168 (11th Cir. 2020) (alterations adopted) (quoting *Wesby*, 138 S. Ct. at 590).

prosecution, and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures.[101] Under the common-law elements of malicious prosecution, Plaintiff must prove that Defendants "instituted or continued" a criminal prosecution against him, "with malice and without probable cause," that terminated in his favor and caused damage to him.[102] To prove a Fourth Amendment violation of his right to be free from unreasonable seizures, Plaintiff "must establish (1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process."[103] Plaintiff "can prove that his arrest warrant was constitutionally infirm if he establishes either that the officer who applied for the warrant should have known that his application failed to establish probable cause, or that an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant."[104]

Despite Plaintiff's arguments to the contrary, Plaintiff's indictment for aggravated stalking provided at least arguable probable cause for his arrest and subsequent detention. "The presence of probable cause defeats a claim of malicious prosecution."[105]

---

[101] *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).

[102] *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019).

[103] *Williams*, 965 F.3d at 1165.

[104] *Id.* (citations omitted).

[105] *Black*, 811 F.3d at 1267.

And in the context of qualified immunity, law enforcement officials need only have had *arguable* probable cause.[106] "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed probable cause existed[.]"[107] Because arguable probable cause looks to whether the officer's actions were objectively reasonable, the officer's underlying intent or motivation is irrelevant.[108] This standard acknowledges that "law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable."[109] "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the crime and the surrounding facts at the moment."[110]

Defendants charged Plaintiff with aggravated stalking pursuant to O.C.G.A. § 16-5-91, which states:

> A person commits the offense of aggravated stalking when such person, in violation of a . . . permanent protective order, . . . follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing or intimidating the other person.[111]

---

[106] *See Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010).

[107] *Id.* (internal quotation marks and citation omitted).

[108] *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002).

[109] *Brescher v. Von Stein*, 904 F.2d 572, 579 (11th Cir. 1990) (quotation marks and citation omitted).

[110] *McDowell v. Gonzalez*, 820 F. App'x 989, 990 (11th Cir. 2020) (citing *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010)).

[111] O.C.G.A. § 16-5-91(a).

In Georgia, "an indictment substantially in the language of the Code is sufficient in form and substance."[112] Here, the indictment substantially tracks the language in the aggravated stalking statute:

> On the 3rd day of December, 2007, in the [Oconee] County, in violation of a condition of pretrial release, did contact another person without their consent and for the purpose of harassing and intimidating them, to wit: did make contact with Cindy Mitchell, without her consent, in violation of a condition of a pre-trial release wherein he was ordered to have no contact with her, dated Nov. 6, 2007, from the Magistrate Court of Oconee county, Georgia, by causing to be delivered to her a book ordered from Amazon.com entitled "Redeeming Love" ….

The indictment evinces at least arguable probable cause that Plaintiff violated the aggravated stalking statute: He violated a no-contact condition of pretrial release by sending a book to another person without her consent for the purpose of harassing and intimidating her.

Plaintiff argues Defendants included only the single action of Plaintiff sending the book in the indictment; therefore, the essential element alleging a pattern of harassing conduct is missing and thus fails to provide probable cause for Plaintiff's subsequent detention. To be sure, in Georgia, prosecutors must prove a criminal defendant engaged in a pattern of harassing and intimidating behavior to convict him of aggravated

---

[112] *Chenault v. State*, 234 Ga. 216, 223 (1975).

stalking.[113] But Georgia law requires prosecutors to present evidence of a pattern of harassing and intimidating behavior to sustain an aggravated stalking conviction at trial, not to establish whether an indictment contains probable cause.

Plaintiff points to the Georgia Supreme Court's statements in *State v. Burke* that "[b]ecause a pattern of harassing and intimidating behavior is required, [a] single violation of a protective order, alone, simply does not establish [the requisite] pattern," and "the mere existence of a protective order [does not] obviate the State's need to establish every element of the offense of aggravated stalking."[114] But the *Burke* court was addressing the State's burden of proof during a criminal trial, not whether the indictment contains probable cause or arguable probable cause. "There is substantial difference between the quantum of proof necessary to constitute sufficient evidence to support a conviction and that necessary to establish probable cause."[115]

Moreover, under Georgia law "'one act of violating a protective order, when done as a pattern of harassing and intimidating behavior, can constitute the crime of

---

[113] *State v. Burke*, 287 Ga. 377, 378 (2010) ("The phrase "harassing and intimidating" in Georgia's aggravated stalking statute "means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear or such person's safety . . . by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.") (quoting O.C.G.A. § 16-5-90(a)(1)).
[114] *Id.* at 379.
[115] *Kelly v. Serna*, 87 F.3d 1235, 1240 (11th Cir. 1996).

aggravated stalking.'"[116] "In determining whether a defendant has exhibited such a pattern of behavior, the jury can consider a number of factors, including the prior history between the parties, the defendant's surreptitious conduct, as well as his overtly confrontational acts, and any attempts by the defendant to contact, communicate with, or control the victim indirectly, as through third parties."[117] The indictment sufficiently contained the elements of the offense constituting aggravated stalking such that reasonable prosecutors "in the same circumstances and possessing the same knowledge as the Defendants could have believed probable cause existed" to bring the aggravated stalking charges against Plaintiff.[118] Thus, Defendant Prosecutors instituted Plaintiff's prosecution with at least arguable probable cause, and they are entitled to qualified immunity on Plaintiff's malicious prosecution claims.

### B. Fifth Amendment Double Jeopardy Claims

Defendants are likewise entitled to qualified immunity on Plaintiff's claim that Defendants prosecuted him for aggravated stalking in violation of his clearly established double jeopardy rights under the Fifth Amendment. No precedent clearly established the continued prosecution was unconstitutional. On the contrary, even the Georgia Court of

---

[116] *Oliver v. State*, ___ S.E.2d ___, 2022 WL 2338678, *5 (Ga. App., June 29, 2022) (quoting *State v. Cusack*, 296 Ga. 534, 537-38 (2015)).

[117] *Louisyr*, 307 Ga. App at 729.

[118] *Grider*, 618 F.3d at 1257.

Appeals' panel was divided over whether Plaintiff's double jeopardy rights had been violated. Judge Goss filed a dissenting opinion "because [he] disagree[d] that the verdict in the 2007 indictment case ("Trial 1") barred the trial conviction for aggravated stalking in the 2008 indictment case ("Trial 2") based on the principles of double jeopardy[.]"[119] Judge Goss thought the two "cases, while intertwined from the standpoint of the parties and their relationship history, involve[d] separate acts occurring on different dates with additional evidence and witnesses presented in Trial 2 that were not part of Trial 1."[120] If a panel of appellate judges disagree over a violation of constitutional rights, certainly every reasonable prosecutor could not understand prosecuting Plaintiff for aggravated stalking would have violated the Double Jeopardy Clause. Even the majority acknowledged that "if the State had limited its presentation of the evidence to events since Trial 1, the evidence would have been sufficient to sustain the aggravated stalking charge."[121]

### C. Conspiracy to Delay Appeal

Defendants are also entitled to qualified immunity on Plaintiff's claim they conspired to delay his appeal. No federal or state law established Defendants' conduct

---

[119] *Ward*, 351 Ga. App.at 500 (J. Goss dissenting).
[120] *Id.*
[121] *Id.* at 499.

(or lack thereof) was in violation of Plaintiff's clearly established constitutional rights. Although appellate courts in Georgia have admonished and rebuked participants in the judicial system for extended and unjustified delays in post-conviction litigation, no court has found a prosecutor liable for violating a defendant's constitutional rights because of a delay.[122]

## IV.    State Law Claims—Barred by Georgia Tort Claims Act

In addition to his federal claims, Plaintiff asserts state law claims against Defendant Prosecutors in their individual capacities alleging they maliciously prosecuted him and intentionally inflicted emotional distress in violation of Georgia state law. Plaintiff alleges Defendant Prosecutors intended to cause Plaintiff harm and acted with malice by instituting and continuing to prosecute Plaintiff for aggravated stalking when they knew that the charge lacked probable cause and state and federal law prohibited such prosecution. Plaintiff alleges these acts were extreme and outrageous and designed to injure Plaintiff causing severe emotional distress. Defendants contend Plaintiff's claims are barred by the Georgia Torts Claims Act ("GTCA"), and the Court agrees.

---

[122] *See Owens v. State*, 303 Ga. 254 (2018) (recognizing it and the Georgia Court of Appeals had "for several years now repeatedly admonished criminal defense lawyers, prosecutors, and trial court judges to address and prevent inordinate and unjustified post-trial, pre-appeal delays," and "directing the Council of Superior Court Judges of Georgia to submit a proposed Uniform Rule of Superior Court "designed to address this problem.").

The GTCA "constitutes the exclusive remedy for any tort committed by a state officer or employee."[123] Pursuant to the GTCA "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor."[124] This immunity applies even when the officer is accused of committing unauthorized torts that are intentional or malicious.[125]

Georgia prosecutors are State, not county, officials when they are "exercising [their] discretion in prosecutorial decisions."[126] And Plaintiff's allegations clearly allege Defendant Prosecutors acted within the scope of their official duties or employment as prosecutors when the alleged misconduct occurred.[127] Thus, the GTCA shields Defendant Prosecutors from being sued individually for the State law claims asserted against them.

---

[123] O.C.G.A. § 50-21-25(a).

[124] *Id.*

[125] *See Ridley v. Johns*, 274 Ga. 241 (2001) ("Since there is no exemption in the statute for acts motivated by malice or an intent to injure, the presence of such motivation has no effect on the immunity granted by the statute.").

[126] *Owens v. Fulton County*, 877 F.2d 947, 950-51 (11th Cir. 1989); *Neville v. Classic Gardens*, 141 f. supp. 2d 1377, 1382 (S.D. Ga. 2001) ("Engaging in a prosecutorial function is the act of a State, not a county, official."); *see also State v. Wooten*, 543 S.E.2d 721, 723 (Ga. 2001) ("[T]he district attorney represents the propel of the state in prosecuting individuals who have been charged with violating [the] state's criminal laws.").

[127] Am. Compl., ¶25 ("At all times relevant to this action, Defendant Chafin was employed as an assistant district attorney by the Western Judicial Circuit of the State of Georgia and was acting within the scope of his employment and under color of law."); ¶ 29 (same allegations for Defendant Forwood); ¶ 33 (same allegations for Defendant Mauldin).

Because Defendant Prosecutors are immune from suit, Plaintiff's only potential avenue of recourse under state law would be against the State of Georgia as the state governmental entity that employed them.[128] But the "Eleventh Amendment to the Constitution bars federal courts from entertaining suits against states."[129] Specifically, the Eleventh Amendment prohibits individuals from brining suit against a state in federal court unless the state either consents to suit or waives its immunity.[130] Although the State of Georgia has waived its sovereign immunity to a limited extent—via the GTCA—with respect to actions brought in state courts, it has not waived its immunity with respect to actions brough in federal court.[131] Because the State of Georgia has neither consented to tort actions in federal court nor waived its sovereign immunity, Plaintiff cannot maintain its state law claims against Defendant Prosecutors.

## V.      Fictitious Party Pleading

Having granted Defendant Prosecutors' Motion to Dismiss, the only remaining defendants are John Does 1-4. "As a general matter, fictitious-party pleading is not

---

[128] *See Riddle v. Ashe*, 269 Ga. 65 (1998) ("While a state actor is immune from suit if acting within the scope of his or her official duties, the GTCA does allow recourse against the state for the same conduct, if certain conditions have been satisfied.").

[129] *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1302 (11th Cir. 2005).

[130] *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984).

[131] O.C.G.A. § 50-21-23(b) ("The [S]tate waives its sovereign immunity only to the extent and manner provided in [the GTCA] and only with respect to actions brought in the courts of the State of Georgia.").

permitted in federal court."[132] Thus, claims against fictitious or non-existent parties are

usually dismissed.[133] The Eleventh Circuit, however, "created a limited exception to this

rule when the plaintiff's description of the defendant is so specific as to "make the

fictitious name, "at the very worst, surplusage."[134]

This exception does not apply here. Plaintiff alleges John Does 1-3 "were Court

officials with the Oconee County Clerk of Superior Court's Office *or some other Court office*

acting under color of law" who "were responsible for training and supervising the court

personnel regarding the docketing and setting of motions" and "creating and

implementing policies and procedures for the clerk's office *or other court office*."[135] Plaintiff

alleges John Doe 4 "was a non-lawyer employee of the District Attorneys' office for the

Western Judicial Circuit, [who] instituted or continued the prosecution of Plaintiff on the

flawed aggravated stalking charge[.]"[136] These descriptions are insufficient to render

Plaintiff's "John Does 1-4" label mere "surplusage."[137]

---

[132] *Richardson v. Johnson*, 598 F.3d 731, 738 (11th Cir. 2010) (per curiam).

[133] *Smith v. Comcast Corp.*, 786 F. App'x 935, 939 (11th Cir. 2019).

[134] *Richardson*, 598 F.3d at 738 (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)).

[135] Pl. Compl. ¶¶ 169-171, p. 31 (emphasis added).

[136] *Id.* at ¶ 185, pp. 33-34.

[137] *Compare Richardson*, 598 F.3d at 738 (finding the complaint's description of John Doe—"John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute"—to be insufficient to identify the defendant among the many guards employed at the Charlotte Correctional Institute), *with Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992) (finding complaint's description of John Doe—"Chief Deputy of the Jefferson County Jail"—to be sufficient to identify the head of the Jefferson County Jail).

## CONCLUSION

For the above reasons, Defendant Prosecutors' Motion to Dismiss [Doc. 17] is

**GRANTED**;[138] Plaintiff's Request for Oral Argument [Doc. 20] is **DENIED**; and John Does

1-4 are *sua sponte* **DISMISSED** under the fictitious party pleading rule.

**SO ORDERED**, this 11th day of August, 2022.

s/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[138] Defendant's Motion to Dismiss Plaintiff's Complaint [Doc. 7] is **DENIED AS MOOT** because Plaintiff filed an Amended Complaint.